UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FELIX, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>THE STATE OF CALIFORNIA, DEPARTMENT OF DEVELOPMENTAL SERVICES, OFFICE OF PROTECTIVE SERVICES,<br><br>        Defendant.<br>_____ / | Case No. 1:13-cv-0561 LJO SKO<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE<br><br>(Doc. 11) |

There are two matters currently pending before the Court. On May 23, 2013, Defendant the State of California ("Defendant")[1] filed (1) a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) a motion to strike pursuant to Federal Rule of Civil Procedure 12(f). Plaintiffs Robert Felix ("Mr. Felix") and Jack Phelps ("Mr. Phelps") have opposed the motions, and Defendant has filed a reply. Having considered the parties' submissions, and for the reasons set forth below, the Court (1) GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss; and (2) GRANTS Defendant's motion to strike.

I.      **PRELIMINARY STATEMENT**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is simply unable to devote inordinate time and resources to individual cases and matters. Given

---

[1] The State of California is being sued through the Department of Developmental Services, Office of Protective Services ("the DDS").

1

1  the shortage of district judges and court staff, this Court addresses only the arguments, evidence, and
2  matters necessary to reach the decision in this order.  The parties and their counsel are encouraged to
3  contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to
4  further accommodate the parties and this action.
5       The parties are required to consider consenting to conducting all further proceedings before a
6  U.S. Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that
7  of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.  Civil
8  trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial
9  in order to accommodate criminal matters.  Civil trials are no longer rescheduled to a later date if for
10 any reason Judge O'Neill becomes unavailable on the original date set for trial.  Moreover, the Fresno
11 Division of the Eastern District of California randomly and without notice reassigns civil actions to
12 U.S. District Judges throughout the nation to serve as visiting judges.  Unless the parties consent to
13 proceed before a Magistrate Judge, this action is subject to reassignment to a U.S. District Judge from
14 outside the Eastern District of California.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations

Mr. Felix is a Hispanic male who is over 40 years old and at all times relevant to this case was employed as a Special Investigator I by the DDS in Porterville, California.  Mr. Phelps is a Caucasian male of Irish descent who is over 40 years old and at all times relevant to this case was also employed as a Special Investigator I by the DDS in Porterville, California.  In this case, both men claim that they were harassed and retaliated against by their co-workers at the DDS.

#### 1.     Initial Harassment

Starting around 2005, three of Mr. Felix's co-workers, Sergeant Dan Dillard ("Sgt. Dillard"), James Rodriguez ("Mr. Rodriguez"), and Gene Alvarez ("Mr. Alvarez"), began harassing Mr. Felix. For example, they repeatedly joked that Mr. Felix wore girly clothes because he wore pink, lavender, and soft blue colored shirts.  They also inappropriately joked that Mr. Felix and another co-worker had nipple rings and had piercings on their penises that were chained together.  And on another occasion, the three played a prank on Mr. Felix by sending him yellow balloons with a card that claimed he had

a secret admirer. Mr. Felix insists that this was intended to imply that he was homosexual because an openly gay co-worker's favorite color was yellow.

## 2.     Complaints and Further Harassment

In January 2006, Mr. Felix informed his supervisor, Joe Bomgardner ("Mr. Bomgardner"), of the harassment, and Mr. Phelps corroborated Mr. Felix's complaints. Mr. Bomgardner responded by taking disciplinary action against Sgt. Dillard and Mr. Rodriguez. Nevertheless, Sgt. Dillard and Mr. Rodriguez continued to harass Mr. Felix. They also began harassing Mr. Phelps. For example, Sgt. Dillard and Mr. Rodriguez refused to communicate with Mr. Felix and Mr. Phelps, they slammed the doors near Mr. Felix's and Mr. Phelps's offices, and they banged loudly against the walls to distract and irritate Mr. Felix and Mr. Phelps.

A month or two later, Mr. Felix and Mr. Phelps complained again to Mr. Bomgardner about Sgt. Dillard's and Mr. Rodriguez's conduct. This, however, made matters worse. Not only did Sgt. Dillard and Mr. Rodriguez continue to harass Mr. Felix and Mr. Phelps, but staff who were friends of Sgt. Dillard and Mr. Rodriguez also began harassing Mr. Felix and Mr. Phelps. For example, they (1) labeled Mr. Felix and Mr. Phelps "rats" and "snitches;" (2) made derogatory comments regarding Mr. Phelps's age, insinuating that Mr. Phelps was too old to perform his job competently, too old to raise children, and too old to be with his younger wife; (3) spread false rumors that Mr. Phelps was taking too much time off work and not documenting it; and (4) stereotyped Mr. Phelps as a "white redneck." This occurred frequently and persisted over the next two years.

Mr. Felix and Mr. Phelps attempted to lodge a complaint with California's Equal Employment Opportunity Office ("CEEO") in November 2007 and January 2008. However, the CEEO stated that Mr. Felix and Mr. Phelps had to take their grievances through the chain of command at the DDS. So in February 2008, Mr. Felix and Mr. Phelps did just that and complained to Commander Jeff Bradley ("Cdr. Bradley") about their harassing work environment. Cdr. Bradley, however, simply laughed at the matter. Mr. Felix and Mr. Phelps, in turn, filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") later that month.

According to Mr. Felix and Mr. Phelps, "Defendant" retaliated against them for filing charges with the EEOC. Mr. Felix and Mr. Phelps insist that after they filed their EEOC complaint, Defendant

denied them promotions that were available and for which they were qualified, Defendant frequently denied them opportunities to work overtime, and Defendant frequently denied them access and use of State vehicles.

Moreover, the harassment by Sgt. Dillard and Mr. Rodriguez continued. On one occasion, in April 2008, Mr. Rodriguez tailgated Mr. Felix and Mr. Phelps and almost ran them off the road. Also, in August 2010, Mr. Rodriguez was made the "de facto" supervisor of Mr. Felix and Mr. Phelps. In that role, Mr. Rodriguez investigated Mr. Felix's and Mr. Phelps's personal lives, falsely accused Mr. Phelps of beating his wife, and "overly scrutinized" Mr. Felix's and Mr. Phelps's work. Although Mr. Felix and Mr. Phelps complained to Chief Corey Smith and Bob Lewis about their circumstances, no action was taken to remedy the situation.

### 3. Overtime Investigation

Mr. Felix and Mr. Phelps also note that in or around 2008 they assisted an investigation by the Porterville Police Department and the Tulare County's District Attorney's Office into overtime fraud at the DDS. Mr. Felix and Mr. Phelps suspected that Lieutenant Scott Gardner ("Lt. Gardner") and Cdr. Bradley were involved in an overtime scheme in which Lt. Gardner received overtime pay by recording hours that he did not work. Mr. Felix and Mr. Phelps believed that Cdr. Bradley approved these hours despite knowing that Lt. Gardner had not actually worked them because Lt. Gardner paid Cdr. Bradley a kickback for approving the hours.

Mr. Felix and Mr. Phelps maintain that they feared Defendant would retaliate against them for participating in the investigation. According to Mr. Felix and Mr. Phelps, Defendant retaliated against Lieutenant Kevin Cook ("Lt. Cook"), who also assisted the overtime investigation. Mr. Felix and Mr. Phelps contend that Defendant retaliated against Lt. Cook by placing him on administrative leave in or around August 2008.

### B. The Instant Action

Plaintiffs initiated this action on April 17, 2013. In their complaint, Plaintiffs assert ten causes of action against the DDS: (1) retaliation against Mr. Felix in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; (2) retaliation against Mr. Phelps in violation of Title VII; (3) retaliation against Mr. Felix in violation of California's Fair Employment and Housing

Act ("FEHA"), Cal. Gov. Code §§ 12940, *et seq.*; (4) retaliation against Mr. Phelps in violation of FEHA; (5) harassment based on sex against Mr. Felix in violation of Title VII; (6) harassment based on sex against Mr. Felix in violation of FEHA; (7) harassment based on race or national origin against Mr. Phelps in violation of Title VII; (8) harassment based on race, national origin, and/or age against Mr. Phelps in violation of FEHA; (9) failure to prevent harassment and/or retaliation against Mr. Felix in violation of FEHA; and (10) failure to prevent harassment and/or retaliation against Mr. Phelps in violation of FEHA.

On May 23, 2013, Defendant filed the now pending motion to dismiss and motion to strike. In response, Plaintiffs filed an opposition on June 6, 2013, and Defendant filed a reply on June 13, 2013. The Court deemed this matter suitable for decision without oral argument and vacated the scheduled hearing pursuant to Local Rule 230(g).

## III. DISCUSSION

### A. Motion to Dismiss

#### 1. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A complaint] must contain sufficient allegations

of underlying facts to give fair notice . . . [to] the opposing party . . . [and] must plausibly suggest an entitlement to relief").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles, 648 F.3d 986, 991 (9th Cir. 2011). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court required to accept as true allegations that are conclusory or the product of unwarranted deductions of fact. Id. Finally, if the court concludes that dismissal is warranted under Rule 12(b)(6), the dismissal should be with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

### 2. Analysis

Plaintiffs' claims can generally be categorized as claims for (a) harassment, (b) retaliation, and (c) failure to prevent harassment and/or retaliation.[2] In its motion to dismiss, Defendant contends that Plaintiffs fail to allege sufficient facts to support any of these types of claims and therefore Plaintiffs' claims should all be dismissed.

### a. Harassment

Title VII and FEHA make it unlawful for an employer to discriminate against an employee due to certain protected characteristics (e.g., race, sex, or religion). See 42 U.S.C. § 2000e-2(a); Cal. Gov. Code § 12940(a). Unlawful discrimination may manifest itself in many forms, including harassment so severe or pervasive that it creates a hostile work environment. See, e.g., EEOC v. Prospect Airport Services, Inc., 621 F.3d 991, 997 (9th Cir. 2010) (sexual harassment); Kang v. U. Lim America, Inc., 296 F.3d 810, 817 (9th Cir. 2002) (national origin harassment). To establish a *prima facie* claim for

---

[2] The Court notes that while Plaintiffs' claims are brought under Title VII *and* FEHA, claims under FEHA are often analogous to claims under Title VII and generally are analyzed similarly. See, e.g., Brooks v. City of San Mateo, 229 F.3d 917, 922-23 (9th Cir. 2000); see also Clark v. Claremont University Center, 6 Cal. App. 4th 639, 662 (Ct. App. 1992) ("Although [FEHA and Title VII] differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of [FEHA].") (internal quotation marks and citation omitted).

6

harassment and a hostile work environment, a plaintiff must show (1) that he was subjected to verbal or physical conduct because of a protected characteristic (e.g., race, sex, or religion), (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. See Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003) (listing elements of *prima facie* claim for hostile work environment based on race under Title VII); Lyle, 38 Cal. 4th at 279 (listing elements of *prima facie* claim for hostile work environment claim based on sex under FEHA).

In moving to dismiss Plaintiffs' claims for harassment, Defendant specifically argues that Plaintiffs fail to allege facts showing that (1) Mr. Felix was harassed because of his sex or gender; or (2) Mr. Phelps was harassed because of his race, national origin, or age. Defendant also contends that any alleged harassment based on sex, gender, race, national origin, or age is not sufficiently severe or pervasive to support a cognizable claim under Title VII or FEHA. The Court addresses Defendant's arguments with respect to each plaintiff below.

### i. Mr. Felix

First, Plaintiffs allege sufficient facts to show at the pleading stage that the harassment Mr. Felix faced was severe or pervasive. In determining whether harassment is severe or pervasive such that it gives rise to a hostile work environment, courts must look at "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (1993). The conduct at issue, as a whole, must amount to something more than simple teasing, offhand comments, or isolated incidents (unless extremely serious). See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). FEHA and Title VII are not civility codes designed to rid the workplace of all vulgarity and inappropriate conduct. See id.; Lyle, 38 Cal. 4th at 295.

Here, Plaintiffs allege that over the span of at least three years, Mr. Felix was harassed by Mr. Rodriguez through, among other things, frequent name-calling, demeaning pranks, false accusations of misconduct, and some physical intimidation. Although the incidents may not have been outrageously offensive in of themselves, when taken altogether, and when viewed in the light most favorable to Mr.

1  Felix, the Court cannot say at this early juncture that the harassment Mr. Felix faced was nothing more
2  than simple teasing, offhand comments, or isolated harassment.  It is plausible that the harassment was
3  severe or pervasive enough to constitute a hostile work environment.

4        The closer question is whether there are sufficient facts in the complaint to show that Mr. Felix
5  was harassed because of his sex or gender.  Plaintiffs' theory is that Mr. Felix was harassed because he
6  did not conform to certain gender stereotypes.[3]  The Ninth Circuit has held that harassment motivated
7  by a person's perceived failure to conform to gender stereotypes constitutes harassment "because of
8  sex" and is therefore actionable under Title VII.  For example, in Nichols v. Azteca Rest. Enter., Inc.,
9  256 F.3d 864, 874 (9th Cir. 2001), the plaintiff, a male host and food server, was harassed by his male
10  co-workers for having effeminate mannerisms.  The male co-workers mocked the plaintiff for walking
11  and carrying his serving tray like a woman, derided the plaintiff for not having sexual intercourse with
12  a female waitress, and referred to the plaintiff as "she," "her," "faggot," and "fucking female whore."
13  Id. at 870, 874.  The Ninth Circuit concluded that such harassment, which at its core was motivated by
14  the plaintiff's failure to conform to certain male stereotypes, was actionable under Title VII as sexual
15  harassment (i.e., harassment because of sex).  See id. at 874-75.

16        Viewing Plaintiffs' allegations in the light most favorable to Mr. Felix, it is plausible that Mr.
17  Felix was harassed because he did not conform to certain gender stereotypes.  Plaintiffs allege that Mr.
18  Felix was routinely harassed by Mr. Rodriguez for wearing pastel-colored shirts, which Mr. Rodriguez
19  considered "girly."  Plaintiffs also allege that Mr. Rodriguez (1) frequently joked that Mr. Felix and
20  another male co-worker had nipple and penis piercings that they chained together; (2) frequently joked
21  that Mr. Felix and his supervisor went on "swinger cruises" together; (3) and sent Mr. Felix balloons,
22  which was meant to imply that Mr. Felix had a male admirer.  These allegations appear to resemble, at
23  least to some degree, the allegations asserted in Nichols.

24        Defendant does not argue otherwise and appears to concede, at least for the limited purposes of
25  this motion, that these incidents may have been motivated by some form of sex or gender stereotyping.
26  (See Doc. 12 at 12) ("The only comments that Plaintiff Felix alleges that have any relationship to his

---

28      [3] In their opposition, Plaintiffs also suggest that Mr. Felix may have been harassed because his male harassers were homosexual and were sexually attracted to him.  This is simply not a reasonable or plausible reading of the complaint.

8

either sex or gender are jokes that were re-told about the 'girly' color of clothes worn; jokes about going on 'swingers' cruises' with another male employee; a claim that Felix and another male officer had nipple rings and piercings on their penis[es] which they chained together; and a bouquet of yellow flowers delivered with a card."). Defendant insists, however, that the other incidents of harassment, such as the slamming of doors, are facially neutral acts that have no connection to gender stereotyping and thus cannot support Mr. Felix's claim. As support for its argument, Defendant cites and primarily relies on Jones v. Lehigh Southwest Cement Co., Inc., 1:12-cv-633-AWI-JLT, 2012 U.S. Dist. LEXIS 99953 (E.D. Cal. July 18, 2012).[4]

The factual allegations presented in Jones are distinguishable from those presented in this case. In Jones, the court dismissed with prejudice the plaintiff's claim for a hostile work environment based on race. The court reasoned that the alleged harassment, which consisted of "close monitoring" of the plaintiff's work, was not inherently racist. Id. at *27. The court reasoned further that the plaintiff did not allege any facts that would tether this otherwise racially-neutral activity to anything with symbolic racist meaning. Id. The court therefore concluded that at most the plaintiff alleged that his harassers made two isolated, derogatory statements, which as a matter of law could not support a viable hostile work environment claim. Id. at *27-28.

Here, there is a factual basis for plausibly tethering Mr. Felix's facially neutral allegations of harassment to harassment based on sex or gender stereotypes. The fact that Mr. Rodriguez explicitly harassed Mr. Felix for not conforming to male stereotypes (e.g., jokes about Mr. Felix's girly clothes) makes it plausible that Mr. Rodriguez's other acts of harassment during the same time period, such as slamming doors to distract Mr. Felix, were motivated, at least in part, by that same reason. Whether there is actually evidence of this or not is a matter reserved for discovery and summary judgment. It is enough to say at this point that this scenario is plausible. Accordingly, Defendant's motion to dismiss

---

[4] Defendant also cites Settle v. Baltimore County, 34 F. Supp. 2d 969, 1003 (D. Md. 1999) as support. That case, however, was decided on a complete evidentiary record in the context of a motion for summary judgment. This case has not yet reached that point. The Court stresses that a showing of facial plausibility at the pleading stage does not necessarily mean that Plaintiffs will ultimately prevail on summary judgment or at trial. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") (citation and internal quotation marks omitted).

Mr. Felix's claims for harassment is DENIED.

### ii.  Mr. Phelps

Turning to Mr. Phelps, Plaintiffs fail to allege facts sufficient to show that Mr. Phelps was harassed because of his race or national origin. The only allegation Plaintiffs make implicating Mr. Phelps's race or national origin is that Mr. Rodriguez and his friends "stereotyped [Mr. Phelps] as a white redneck." (Doc. 1 ¶ 26.) This is a vague and almost conclusory statement that does not, without further factual support, plausibly show that the harassment Mr. Phelps allegedly faced was due to his race or national origin. Cf. Kang, 296 at 817 (holding that the plaintiff offered sufficient evidence of national origin harassment where his supervisor imposed longer work hours on him simply because his supervisor stereotyped Koreans as harder workers). Accordingly, Defendant's motion to dismiss is GRANTED with respect to Mr. Phelps's Title VII claim for harassment due to race or national origin. Plaintiffs will, however, be afforded leave to amend so that they may allege additional facts to support their allegations if they can.

As for Mr. Phelps's claim that he was harassed because of his age, Plaintiffs' allegations are minimal but sufficient at this early stage in the proceedings to show that such a claim is "plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs allege that over the course of at least two years, their co-workers frequently made derogatory comments about Mr. Phelps's age that suggested that he was incompetent at his job, was too old for his wife, was unable to take care of his newborn child, and was taking too much time off work to take care of his newborn child. Plaintiffs also allege that Mr. Phelps complained to his supervisors, but they did not remedy the situation. These allegations, when viewed in the light most favorable to Mr. Phelps, are sufficient to show at the pleading stage harassment and a hostile work environment based on age that is either severe or pervasive. See Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) ("Repeated derogatory or humiliating statements . . . can constitute a hostile work environment."). Accordingly, Defendant's motion to dismiss is DENIED with respect to Mr. Phelps's FEHA claim for harassment based on race, national origin, *and* age.

### b.  Retaliation

Title VII and FEHA make it unlawful for an employer to retaliate against an employee for opposing or participating in an investigation into practices forbidden by those laws (i.e., discrimination

based on race, sex, religion, etc.). See 42 U.S.C. § 2000e-3; Cal. Gov. Code § 12940(h). To establish a *prima facie* claim for retaliation, a plaintiff must show that (1) he engaged in protected activity, (2) his employer subjected him to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. See Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th Cir. 2008) (listing elements of *prima facie* claim for retaliation under Title VII); Kelley v. The Conco Companies, 196 Cal. App. 4th 191, 209 (Ct. App. 2011) (listing elements of *prima facie* claim for retaliation under FEHA).

In moving to dismiss Plaintiffs' claims for retaliation, Defendant argues that Plaintiffs fail to allege facts demonstrating all three elements (i.e., protected activity, adverse employment action, and causation). Specifically, Defendant maintains that Plaintiffs' allegations of retaliation merely amount to ordinary workplace ostracism and gossiping, which do not constitute adverse employment actions. And while Defendant concedes that being denied a promotion may constitute an adverse employment action, Defendant argues that Plaintiffs fail to allege facts showing a causal link between a decision to deny Plaintiffs a promotion and any protected activity Plaintiffs engaged in.

The Court only partly agrees. First, Plaintiffs sufficiently allege that they engaged in protected activity. Plaintiffs allege that they complained to their supervisors on multiple occasions about what they believed to be harassment and discrimination. Plaintiffs also allege that they filed discrimination charges with the EEOC in or around February 2008. All of these actions constitute protected activity under Title VII and FEHA. See Ray, 217 F.3d at 1240 n.3 ("[F]iling a complaint with the EEOC is a protected activity. Making an informal complaint to a supervisor is also protected activity.") (citations omitted); McCarthy v. R.J. Reynolds Tobacco Co., 819 F. Supp. 2d 923, 932 (E.D. Cal. 2011) ("[A]n employee's formal or informal complaint regarding unlawful employment practices [under Title VII] is 'protected activity[.]'") (citation omitted).

Second, Plaintiffs sufficiently allege that they were subjected to adverse employment actions. There is no question that denials of promotions and overtime opportunities may constitute actionable adverse employment actions. See Breiner v. Nev. Dep't of Corr., 610 F.3d 1202, 1208 (9th Cir. 2010) (denial of promotions); Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010) (denial of overtime opportunities). Moreover, retaliatory harassment may rise to the level

1  of an adverse employment action if it is "sufficiently severe or pervasive to alter the conditions of the
2  victim's employment and create an abusive working environment." Ray, 217 F.3d at 1245 (quoting
3  Harris, 510 U.S. at 21). Here, Plaintiffs allege all the above. According to Plaintiffs, they were denied
4  promotions; denied opportunities to work overtime; and were persistently harassed through the use of
5  derogatory name-calling, false accusations of misconduct, and pranks. While Defendant characterizes
6  this conduct as nothing more than ostracism, when viewed in the light most favorable to Plaintiffs, the
7  allegations are sufficient to show plausible adverse employment actions. See id. at 1245-46 (persistent
8  verbal abuse, false accusations of misconduct, pranks, and encouraging animus against the plaintiff by
9  other employees can amount to an adverse employment action).

10 　　　　The dispositive question, then, is whether Plaintiffs sufficiently allege the third element of a
11 *prima facie* claim for retaliation: a causal link between the adverse employment actions and Plaintiffs'
12 protected activity. With respect to Plaintiffs' allegations of retaliatory harassment, there are sufficient
13 facts to infer a plausible causal link between the alleged harassment and Plaintiffs' protected activity.
14 According to Plaintiffs, each time they complained of what they believed to be workplace harassment
15 and discrimination, the retaliatory harassment worsened and their supervisors failed to take effective
16 action. Moreover, according to Plaintiffs, the harassment included calling Plaintiffs demeaning names
17 such as "rat" and "snitch." These allegations plausibly suggest that Plaintiffs were harassed because
18 of their complaints.

19 　　　　However, as to Plaintiffs' allegations that they were denied promotions, opportunities to work
20 overtime, and access to department vehicles, there are insufficient facts to infer a plausible causal link
21 between these events and Plaintiffs' protected conduct. Plaintiffs provide no allegations regarding the
22 actual circumstances behind any denial of promotion, overtime, or access to department vehicles. All
23 Plaintiffs allege is that after they filed charges of discrimination with the EEOC, "Defendant [i.e., the
24 DDS] subjected them to different terms and conditions of employment[.]" (Doc. 1 ¶ 38.) This vague
25 reference to Defendant (notably, no identified harasser is alleged to have taken part in any decision to
26 deny Plaintiffs promotions, overtime, or vehicle access) and loose statement regarding temporality do
27 not plausibly suggest a causal nexus between Plaintiffs' protected activities and any decision to deny
28 Plaintiffs promotions, overtime, or vehicle access.

In sum, Plaintiffs' allegations regarding retaliatory harassment are sufficient to establish claims for retaliation under Title VII and FEHA. However, to the extent that Plaintiffs seek to premise their retaliation claims on other alleged adverse employment actions (i.e., denials of promotions, overtime, or vehicle access), Plaintiffs' allegations fall short. Accordingly, on those issues, Defendant's motion to dismiss is GRANTED. Plaintiffs will be afforded leave to amend so that they may allege additional facts to support their allegations if they can.

### c. Failure to Prevent

Under FEHA, it is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k). An employer's obligation to prevent discrimination and harassment under section 12940(k) also extends to preventing retaliation that is unlawful under FEHA. Taylor v. City of Los Angeles Dep't of Water & Power, 144 Cal. App. 4th 1216, 1240 (Ct. App. 2006), disapproved on other grounds by Jones v. Lodge at Torrey Pines Partnership, 24 Cal. 4th 1158 (2008).

Defendant argues that Plaintiffs fail to state a claim under section 12940(k) because Plaintiffs have not sufficiently alleged any underlying claim for discrimination, harassment, or retaliation. See Dep't of Fair Employment & Housing v. Lucent Technologies, Inc., 642 F.3d 728, 748 (9th Cir. 2011) ("[E]mployers are not liable for failing to take necessary steps to prevent discrimination, except where the [discriminatory] actions took place and were not prevented.") (internal quotation marks omitted); see also Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 289 (Ct. App. 1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen . . . ."). However, as already discussed above, Plaintiffs allege cognizable claims for harassment and retaliation. Accordingly, Defendant's motion to dismiss is DENIED with respect to Plaintiffs' claims for failure to prevent discrimination or retaliation under section 12940(k).

### B. Motion to Strike

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court "to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Redundant allegations are

those that are needlessly repetitive or wholly foreign to the issues involved in the action." Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citations omitted), rev'd on other grounds, 510 U.S. 517 (1994). Similarly, "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id. (internal quotation marks omitted). Lastly, a matter is scandalous if it "reflects unnecessarily on [a party's] moral character, or uses repulsive language that detracts from the dignity of the court." Lynch v. Southampton Animal Shelter Found. Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (citation omitted).

The function of a motion to strike is "to avoid the expenditure of time and money" associated with litigating "spurious issues." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Nevertheless, motions to strike are "generally disfavored." Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). "[C]ourts often require a showing of prejudice by the moving party before granting the requested relief." Alco Pacific, 217 F. Supp. 2d at 1033 (internal quotation marks and citations omitted). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." Id. (citing Fogerty, 984 F.2d at 1528) (internal quotation marks omitted).

### 2. Analysis

Defendant moves to strike Plaintiffs' allegations regarding overtime fraud, presumably because those allegations are immaterial or impertinent to this case. Plaintiffs, meanwhile, counter that (1) the motion to strike is procedurally deficient because Defendant failed to notice the motion properly under Local Rule 230; and (2) the motion to strike lacks merit because allegations regarding overtime fraud are relevant to this case.

Plaintiffs' procedural argument is unpersuasive. Even assuming that Local Rule 230 requires all motions to be separately noticed, Plaintiffs were not, in any way, prejudiced by Defendants failure to do so here. Defendant clearly indicated in its notice of motion that it had filed a motion to dismiss

*and* a motion to strike (see Doc. 11), and Plaintiffs cannot realistically argue that the motion to strike caught them by surprise.  Therefore, the Court declines to deny Defendant's motion to strike based on Plaintiff's procedural argument.

Turning to the merits of the motion to strike, the Court agrees with Defendant that allegations regarding overtime fraud cannot serve as the basis for any retaliation claim.  Title VII and FEHA only make it unlawful for an employer to retaliate against an employee for opposing or participating in an investigation into practices that are forbidden *by those laws* (i.e., discrimination based on sex, religion, race, etc.).  See 42 U.S.C. § 2000e-3; Cal. Gov. Code § 12940(h); Learned v. Bellevue, 860 F.2d 928, 932-33 (9th Cir. 1988).  Overtime fraud is not a practice that is forbidden by either Title VII or FEHA.  Therefore, even if Defendant retaliated against Plaintiffs for assisting an investigation into overtime fraud, such cannot support a viable claim for retaliation.  See, e.g., Bermudez v. Office Max, No. 2:05-cv-2245-GEB-DAD, 2007 U.S. Dist. LEXIS 35198, at *9-10 (E.D. Cal. May 3, 2007) (reporting theft by a co-worker is not conduct protected under FEHA and therefore retaliation for reporting theft does not establish a claim under FEHA).

Not only do the allegations regarding overtime fraud fail to state an independent viable claim, but they also unnecessarily confuse the basis for the claims that are at issue in this case.  For example, Plaintiffs contend that the allegations regarding overtime fraud tend to show that they were retaliated against because the allegations establish that Plaintiffs were treated differently than other employees.  However, the pertinent question for Plaintiffs' retaliation claims is not simply whether Plaintiffs were treated differently, but whether Plaintiffs were treated differently *as a result of engaging in protected conduct*.  Allegations of overtime fraud do not help Plaintiffs establish this.  If anything, it undermines such a showing.  It suggests that Plaintiffs were treated differently regarding overtime because other employees engaged in fraud, not because Plaintiffs filed an EEOC complaint or engaged in any other protected conduct.

In sum, Plaintiffs' allegations regarding overtime fraud do not state an independent claim and will only confuse the trier of fact as to the actual basis for Plaintiffs' retaliation claims.  Accordingly, the Court GRANTS Defendant's motion to strike.

///

## IV. CONCLUSION

For the reasons set forth above, the Court:

1. GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss as follows:

   a. Defendant's motion to dismiss is GRANTED with respect to Mr. Phelps's Title VII claim for harassment based on race or national origin.

   b. Defendant's motion to dismiss is GRANTED to the extent that Plaintiffs seek to premise their Title VII and FEHA retaliation claims on the allegation that they were denied promotions, overtime, and access to vehicles.

   c. Defendant's motion to dismiss is DENIED in all other respects.

2. GRANTS Defendant's motion to strike. Plaintiffs' allegations regarding the overtime scheme and investigation (Doc. 1 ¶¶ 42-46) are stricken.

3. ORDERS Plaintiffs to file any amended complaint they elect to file in response to this order by no later than August 2, 2013. The Court will assume that if an amended complaint is filed timely, it will be Plaintiffs' best efforts. It is unlikely another opportunity to amend will be allowed.

IT IS SO ORDERED.

Dated: **July 12, 2013**                    **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE